# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| St. Paul Fire & Marine Insurance Company, | Civil No. 12-1482 (DWF/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Abhe & Svoboda, Inc., | |
| Defendant. | |

Daniel A. Haws, Esq., and John Paul J. Gatto, Esq., HKM Law Group, and James W. Carbin, Esq., and P. Ryan McElduff, Esq., Duane Morris LLP, counsel for Plaintiff.

Christopher L. Lynch, Esq., and Thomas C. Mielenhausen, Esq., Barnes & Thornburg LLP, counsel for Defendant.

# INTRODUCTION

The plaintiff-insurer filed a complaint seeking a declaration that it was not obligated to cover the defendant-insured's claim for damages arising from its barge sinking. The plaintiff moved for summary judgment and to strike certain claims. (Doc. No. 69.) The defendant moved for partial summary judgment. (Doc. No. 84.) For the reasons outlined below, the Court grants in part and denies in part the plaintiff's motion, and the Court grants the defendant's motion.

## BACKGROUND

I. **Factual Background**

Plaintiff St. Paul Fire & Marine Insurance Company ("St. Paul Fire") filed a complaint seeking a declaration that it was not obligated to cover the losses of Defendant Abhe & Svodoba, Inc. ("ASI"). ASI is a Minnesota company that repairs and paints "industrial structures, communication towers, dams, bridges and other infrastructure." (ASI.'s Partial MSJ Br. at 2.)[1]

In May 2010, ASI was hired to repair and paint Pell Bridge over the Narragansett Bay in Rhode Island. (*Id.*) In August 2010, ASI chartered two "dumb"[2] barges from Sterling Equipment, Inc. As part of the charter, ASI was required to have the barges professionally surveyed and to repair anything identified by the survey. As relevant here, the survey found that barge SEI-34 (the "Barge") had "numerous small wastage pinholes about the deck." (Doc. No. 109 ¶ 16, Ex. 15.) The survey did not recommend any repairs. *St. Paul Fire & Marine Ins. Co. v. Abhe & Svoboda, Inc.*, 798 F.3d 715, 717 (8th Cir. 2015).

In May 2011, ASI applied to St. Paul Fire for insurance for the Barge (and other ships). St. Paul Fire issued a Marine Hull (generally, the "Hull Policy") and Protection

---

[1] The Court cites to ASI's Brief for Partial Summary Judgment (Doc. No. 99) as "ASI's Partial MSJ Br."; St. Paul's Opposition Brief for Partial Summary Judgment (Doc. No. 127) as "Pl.'s Partial MSJ Opp."; ASI's Reply Brief (Doc. No. 142) as "ASI's Reply"; St. Paul Fire's Opening Brief for Summary Judgment and to Strike Certain Claims (Doc. No. 102) as "Pl.'s Strike Br."; ASI's Opposition Brief (Doc. No. 132) as "ASI's Strike Opp."; and St. Paul Fire's Reply Brief (Doc. No. 136) as "Pl.'s Strike Reply."

[2] A dumb barge means the barge did not have a motor or other means of propulsion.

and Indemnity Policy (generally, the "P&I Policy") effective July 1, 2011, through July 1, 2012. On October 29, 2011, a severe nor'easter rolled through the Newport area. During the storm, the Barge sank.

Shortly after the sinking, the Coast Guard informed ASI that the Coast Guard would federalize the wreck if ASI did not remove the wreck by a certain deadline. ASI notified St. Paul Fire. ASI then contacted Donjon Marine Co., Inc.—a marine salvage company—to negotiate a contract to remove the sunken barge. Before the contract was finalized, St. Paul Fire took over the negotiations for the final version. On December 9, 2011, Donjon raised the Barge along with any equipment still attached to it, but Donjon refused to collect any equipment that had fallen off. With the Coast Guard's deadline quickly approaching, ASI hired a second company to remove the equipment.

Donjon was not fully paid for its work and filed for arbitration. In the arbitration, ASI counterclaimed for the added removal costs caused by Donjon abandoning the project. ASI tendered the defense of the arbitration, but St. Paul Fire denied coverage. ASI ultimately prevailed in the arbitration and recovered some of its costs.

## II. Procedural History

On June 20, 2012, while the arbitration with Donjon was ongoing, St. Paul Fire filed a complaint seeking declaratory relief. (*See* Doc. No. 1.) ASI filed four counterclaims, including one that alleged St. Paul Fire negligently negotiated the salvage contract with Donjon.

On February 28, 2014, St. Paul Fire moved for summary judgment on a number of grounds, including that ASI violated its duty of utmost good faith by failing to disclose

3

the survey of the Barge. On April 29, 2014, Judge Paul A. Magnuson granted summary judgment for St. Paul Fire finding that the insurance policy was *void ab initio* due to ASI's failure to disclose the survey. (Doc. No. 143 at 7-9.) ASI appealed. (Doc. No. 145.) The Eighth Circuit concluded that a genuine issue of material fact remained regarding whether St. Paul Fire actually relied on ASI's failure to disclose the survey. (Doc. No. 152 at 11.) The Eighth Circuit remanded the case for further proceedings.

On remand, the parties identified the remaining issues from their motions. Left from ASI's motion for partial summary judgment is whether the P&I Policy contained an express warranty of seaworthiness. Left from St. Paul Fire's motion are the following issues: (1) if the P&I Policy contained an express warranty of seaworthiness, then whether the Barge was seaworthy; (2) whether ASI is collaterally estopped from seeking damages from St. Paul Fire because the arbitrator already found those damages were not recoverable from Donjon; (3) assuming that St. Paul Fire negligently negotiating the Donjon contract, whether St. Paul Fire could be the legal cause of ASI's damages from Donjon breaching the contract; (4) whether ASI is entitled to a jury for any of its claims; and (5) whether ASI can seek its attorney fees for defending this action.

## DISCUSSION

**I.     Legal Standard**

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party.

4

*Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009).  However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

**II.    Seaworthiness**

The Barge had both Hull and P&I insurance.  According to the parties, ASI's losses could be covered by the P&I Policy, but not the Hull Policy.  St. Paul Fire has moved for summary judgment seeking an order finding that that coverage is unavailable under the P&I Policy because ASI breached a warranty to keep the Barge seaworthy. ASI has moved for partial summary judgment seeking an order that the P&I Policy does not contain an express or implied warranty of seaworthiness.  Thus, both motions require the Court to first examine whether the P&I Policy contains a warranty of seaworthiness.

5

As an initial matter, hull insurance contains an implied warranty of seaworthiness, while P&I insurance does not. *See L & L Marine Serv., Inc. v. Ins. Co. of N. Am.*, 796 F.2d 1032, 1035 (8th Cir. 1986); *see also* (Pl.'s Partial MSJ Opp. 21 ("St. Paul has never argued that the implied Seaworthiness Warranties appl[ies] to the P&I coverage.")). The implied warranty of seaworthiness contains two parts. First, the owner warrants that the ship is seaworthy at the time the hull policy attaches. And second, the owner warrants that "the Owner, from bad faith or neglect, will not knowingly permit the vessel to break ground in an unseaworthy condition." *L & L Marine Serv.*, 796 F.2d at 1035. The Eighth Circuit has held that the implied warranty requires the owner to exercise ordinary diligence. *Id.* at 1035-36. In other words, the insurer will not be liable for losses arising from an owner negligently allowing a ship to sail in an unseaworthy condition. *Id.* Other circuits, however, have applied more stringent tests than mere negligence. *See id.* at 1035 (noting that the Fifth Circuit applied the more stringent knowingly standard).

In addition, the insurance agreement contained an express warranty of seaworthiness. The provision provided:

> Warranted at the inception of this policy the vessel shall be in a seaworthy condition and thereafter, during the currency of this policy, [ASI] shall exercise due diligence to keep the vessel seaworthy, and in all respects fit, tight, and properly manned, equipped and supplied.

(Doc. No. 90, ¶ 8, Ex. D ("Insurance Agreement") at ASI052182.) ASI argues that the express seaworthiness warranty applies to the Hull Policy and not to the P&I Policy. St. Paul Fire argues that the express warranty must apply to the P&I Policy because the Hull Policy already contains an implied warranty.

6

"Disputes arising under marine insurance contracts are governed by state law, unless an established federal admiralty rule addresses the issue raised." *Assicurazioni Generali S.P.A. v. Black & Veatch Corp.*, 362 F.3d 1108, 1111 (8th Cir. 2004) (citing *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 316-21 (1955)). Here, both parties appear to agree that Minnesota law governs the interpretation of the insurance contract. *See id.* (concluding that state law governed the interpretation of the marine insurance contract). Under Minnesota law, "[w]hile the insured bears the initial burden of demonstrating coverage, the insurer carries the burden of establishing the applicability of exclusions." *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013). Once an exclusion is established, however, "the burden of proof shifts back to the insured." *Id.* (quotation marks omitted).

"Interpretation of an insurance policy is a question of law." *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006). Courts must interpret policy language "according to both plain, ordinary sense and what a reasonable person in the position of the insured would have understood the words to mean." *Wolters*, 831 N.W.2d at 636 (quotation marks omitted). "If the language of an insurance contract is unambiguous, it must be given its plain and ordinary meaning. But if the language is ambiguous, it will be construed against the insurer, as drafter of the contract." *Bloomington Steel*, 718 N.W.2d at 894 (internal citation omitted). Language in an insurance policy should be deemed ambiguous only when "it is susceptible to two or more reasonable interpretations," *Wolters*, 831 N.W.2d at 636, and courts should decline

to find ambiguity where it does not exist, *see Engineering & Construction Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 706 (Minn. 2013).

The insurance agreement is a compilation of a number of form-document sets, as outlined in the table of contents:

| Title | Form Number | Edition Date |
|---|---|---|
| Disclosure Notice Terrorism Risk Insurance Act Of 2002 | D0100 | 03-09 |
| Declarations | OMGE0001 | 12-08 |
|   Policy Form List | 40705 | 05-84 |
|   AIMU - Chemical, Biological, Bio-Chemical And Electromagnetic Exclusion Clause (3/1/03) | OMGE0100 | 03-03 |
|   AIMU - Extended Radioactive Contamination Exclusion Clause (3/1/03) | OMGE0101 | 03-03 |
|   Cancellation Clause | OMGE0103 | 07-05 |
|   Punitive Damages Exclusion | OMGE0106 | 07-05 |
| CAP On Losses From Certified Acts Of Terrorism Endorsement | D0144 | 01-08 |
|   AIMU U.S. Economic And Trade Sanctions Clause | OMGE0108 | 10-06 |
| American Institute Hull Clauses (7) (6/2/77) | OMOH0001 | 06-77 |
|   Schedule Of Vessels | OMOH0122 | 07-08 |
|   Special Conditions | OMOH0124 | 07-05 |
|   Excess Collision Liability - American Institute Hull Clauses | OMOH0143 | 07-05 |
|   Hull and Liability Combined Single Limit Coverage Endorsement | OMOH0500 | 07-05 |
|   Automatic Attachment | OMOH0500 | 07-05 |
|   Additional Insured | OMOH0500 | 07-05 |
| Protection And Indemnity Clauses (SP-38) | OMPI0002 | 01-55 |
|   Swimming, Diving And Snorkeling Exclusion | OMPI0110 | 07-08 |

(Insurance Agreement at ASI052164.) The express warranty of seaworthiness is part of the Special Conditions forms, which is organized with the Hull Policy (OMOH0124). Separately, the P&I Policy includes a subsection of special conditions. This subsection contains only one term: a warranty that a particular person will pilot a particular tug boat.

Additionally, ASI avers that the form numbering indicates to which policy the form applies. That is, the "OMOH" forms apply to the Hull Policy and the "OMPI"

forms apply to the P&I Policy.³ Thus, ASI argues, that because the Special Conditions is marked as an OMOH form, the Special Conditions—and therefore the express warranty of seaworthiness—applies to only the Hull Policy.

Further, when St. Paul Fire wanted to carryover conditions from the Hull Policy to the P&I Policy, St. Paul Fire explicitly incorporated those provisions. For example, the P&I Policy states, "The navigation limits in this policy covering the hull, machinery, etc. of the vessel named herein are considered incorporated herein." (Insurance Agreement at ASI062196.) The Schedule of Vessels, which follows the Hull Policy, is also incorporated by reference into the P&I Policy. The P&I Policy, however, does not explicitly incorporate the warranty of seaworthiness. Thus, based on the separate special-condition sections, the form numbering, and the lack of incorporation, the Court concludes that the warranty of seaworthiness contained in the Hull Policy does not apply to the P&I Policy.

St. Paul Fire's arguments to the contrary are unpersuasive. First, St. Paul Fire relies on *St. Paul Fire & Marine Insurance Co. v. Belle of Hot Springs*, 844 F.2d 550 (8th Cir. 1988), where the Eighth Circuit found that the seaworthiness warranty applied to a P&I policy. *See id.* at 551 & 553. St. Paul Fire argues that *Belle* is indistinguishable from this case. But when the Court asked for a copy of the insurance agreement in *Belle*, St. Paul Fire was unable to find one. (Doc. No. 182.) Additionally, many of the forms here postdate *Belle*. Indeed, the Special Conditions are from 2005—well after *Belle* was

---

³ "OMGE" forms would then appear to apply to the whole insurance agreement. Thus, based on ASI's argument, the Punitive Damages Exclusion would apply to both. (*See* ASI's Partial MSJ Br. at 5.)

decided in 1988. Thus, the Court finds that *Belle* does not demand that the Court find that the P&I Policy contains an express warranty of seaworthiness.

Second, St. Paul Fire argues that if the express provision does not apply to the P&I Policy, then the express provision is meaningless because the Hull Policy already contains an implied warranty of seaworthiness. But even if the implied and express warranties required ASI to engage in the same conduct, an express clause is not meaningless merely because it memorializes an implied term. *See* 11 *Williston on Contracts* § 31:7 (4th ed. 2017) (noting that when a contract is silent, only reasonable terms will be implied). For example, a court will not interpret a written contract for goods differently even though there are similar implied terms codified in the Uniform Commercial Code. *See* U.C.C. § 1-303(e) (noting that express terms trump trade usage). Likewise, the Court here will not interpret the express contract provisions differently because some analogous rule also exists in the common law. The Court therefore concludes that the existence of an implied warranty of seaworthiness does not require the Court to interpret the express warranty of seaworthiness as applying to the P&I Policy. Accordingly, the Court grants ASI's motion for partial summary judgment and denies St. Paul Fire's motion for summary judgment barring coverage on the basis that the Barge was not seaworthy.

### III. Collateral Estoppel

In the alternative, St. Paul Fire argues that ASI is collaterally estopped from seeking damages because an arbitrator already found that ASI could not recover those damages from Donjon (the business hired to raise the barge). (Pl.'s Strike Memo. at 28.)

The parties seem to agree that Minnesota law applies. Under Minnesota law, collateral estoppel applies when:

> (1) [T]he issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*State v. Lemmer*, 736 N.W.2d 650, 659 (Minn. 2007). The party seeking estoppel has the burden. *Virsen v. Rosso, Beutel, Johnson, Rosso & Ebersold*, 356 N.W.2d 333, 337 (Minn. Ct. App. 1984).

Here, St. Paul Fire has failed to prove all of the elements of collateral estoppel. While St. Paul Fire appears to have established that ASI is seeking the same damages here as it sought in the arbitration, St. Paul Fire has not shown that the issue of whether ASI can recover those damages is the same in both cases. In other words, St. Paul Fire has failed to show that ASI's damages from Donjon's breach would be the same as ASI's damages from St. Paul Fire's breach of the insurance agreement. Because St. Paul Fire failed to demonstrate that collateral estoppel is appropriate, the Court denies Plaintiff's motion for summary judgment seeking collateral estoppel.

## IV. ASI's Claim for Negligence

St. Paul Fire also moves for summary judgment for ASI's negligence claim. ASI alleges that St. Paul Fire negligently negotiated the Donjon contract. St. Paul Fire's negligence allegedly injured ASI because the poorly worded contract allowed Donjon to abandon the project and undertake a lengthy arbitration. St. Paul Fire argues that it is entitled to summary judgment because ASI cannot establish causation. That is, St. Paul

11

Fire argues that ASI cannot show that Donjon would have completed the project if the contract had been worded differently. (*See* Pl.'s Strike Memo. at 33.)

"The analysis of a maritime tort is guided by general principles of negligence law." *Consol. Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987). Under admiralty law, the defendant's negligence is actionable only if it was the "legal cause" of the plaintiff's injury. *Donaghey v. Ocean Drilling & Expl. Co.*, 974 F.2d 646, 649 (5th Cir. 1992). A party's actions are a legal cause if they are a substantial factor in bringing about the injury. *Id.* "The term 'substantial factor' means more than 'but for the negligence, the harm would not have resulted.'" *Id.* Generally, causation is a question of fact left for the factfinder. *See, e.g.*, *Lubbers v. Anderson*, 539 N.W.2d 398, 402 (Minn. 1995). Summary judgment is appropriate, however, when "reasonable minds can arrive at only one conclusion." *Id.*

Here, St. Paul Fire argues that even if the Court were to find that St. Paul Fire breached a duty to ASI by negligently negotiating the Donjon contract, ASI cannot show that such a breach caused ASI any damages. The Court, however, concludes that a question of material fact remains regarding whether the poorly worded contract contributed to Donjon's decision to breach its agreement. It could be the case that the contract did not factor into Donjon's decision, but St. Paul Fire does not cite any evidence to show that Donjon would have acted the same way regardless of the contract. Thus, the Court denies St. Paul Fire's motion for summary judgment for ASI's claim for negligence.

## V. Plaintiff's Motion to Strike ASI's Jury Demand

St. Paul Fire has also moved to strike ASI's request for a jury because juries are generally not allowed in admiralty cases. ASI does not appear to dispute this general statement of law. Instead, ASI argues that it is entitled to a jury for its common-law negligence claim. (Def.'s Strike Opp. at 50.) ASI's negligence claim (for the poorly worded contract) is an alternative theory for ASI's claim that St. Paul Fire breached the insurance agreement by failing to enforce the salvage contract against Donjon. (*See id.* at 48).

Generally, claims in admiralty do not carry with them a right to a jury trial. 14A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Fed. Prac. & Proc.* § 3672 (4th ed. 2017). An issue arises, however, when a plaintiff has elected to proceed in admiralty, but the defendant brings common-law counterclaims that carry with them the right to a jury. *Id.* To resolve this issue, courts have held that when "[t]he defendant's counterclaims arise out of the same contract as the plaintiff's claims and involve the same operative facts, the plaintiff's [admiralty] designation trumps defendant's jury demand, and the entire case will be tried to the court without a jury." *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, Civ. No. 06-3123, 2008 WL 2980919, at *2 (S.D.N.Y. Aug. 1, 2008) (noting that this rule is applied in the "distinct majority of decisions"). Here, ASI's breach-of-contract claim is based on the same insurance policy under which St. Paul Fire brought its declaratory-judgment action in admiralty. Thus, St. Paul Fire's election to proceed in admiralty supersedes any right of ASI's to have its breach-of-contract claim tried to a jury. And because ASI's negligence claim is just an

13

alternative theory of liability based on the same conduct, ASI is not entitled to a jury for its negligence claim. *See id. But see In re Lockheed Martin Corp.*, 503 F.3d 351, 359-60 (4th Cir. 2007) (concluding that an insurer cannot use a declaratory judgment brought in admiralty to usurp the insured's right to a jury trial for its breach-of-contract claim). The Court therefore grants St. Paul Fire's motion to strike Plaintiff's request for a jury trial.

**VI.  Plaintiff's Motion to Strike ASI's Claim for Attorney Fees.**

St. Paul Fire has also moved to strike ASI's claim for attorney fees because the claim is barred under admiralty law. ASI argues that Minnesota law applies, and that under Minnesota law, an insured can recover attorney fees from successfully defending an insurer's declaratory-judgment action.

"Disputes arising under marine insurance contracts are governed by state law, unless an established federal admiralty rule addresses the issue raised." *Assicurazioni Generali S*, 362 F.3d at 1111. Here, the Court concludes that there is no established federal rule that bars insureds from recovering attorney fees. At most, there is a circuit split, and the Eighth Circuit has not addressed the issue. *Compare Am. Nat. Fire Ins. Co. v. Kenealy*, 72 F.3d 264, 271 (2d Cir. 1995) (finding that admiralty law clearly establishes that attorney fees are not recoverable by the insured), *with All Underwriters v. Weisberg*, 222 F.3d 1309, 1315 (11th Cir. 2000) (concluding that state law applied to the issue of whether the insured could recover attorney fees). As a result, in the absence of established federal precedent, the Court will apply Minnesota law. *See N.Y. Marine & Gen. Ins. Co. v. Cont'l Cement Co., LLC*, 761 F.3d 830, 840 (8th Cir. 2014) (noting that a single circuit's decision did not establish a federal rule).

14

The Minnesota Supreme Court has concluded that in certain circumstances an insurer will have to pay the insured's attorney fees from successfully defending a declaratory judgment in which the insurer sought to avoid coverage. *Atl. Mut. Ins. Co. v. Judd Co.*, 380 N.W.2d 122, 125 (Minn. 1986); *see also Milwaukee Mut. Ins. Co. v. Val Pro, Inc.*, Civ. No. 12-1658, 2013 WL 6388669, at *4 (D. Minn. Dec. 6, 2013). Whether the insured can recover the attorney fees turns on the policy language. *XL Specialty Ins. Co. v. Miller*, Civ. No.03-1128, 2004 WL 1701039, at *2 (D. Minn. July 28, 2004). Here, St. Paul Fire must cover the "[c]osts and expenses, incurred with [St. Paul Fire's] approval, of investigating and/or defending any claim or suit against [ASI] arising out of a liability or an alleged liability of [ASI] covered by this policy." (Doc. No. 88, Ex. A, 1711.) Courts have awarded attorney fees based on similar policy language. *See, e.g.*, *Val Pro, Inc.*, Civ. No. 12-1658, 2013 WL 6388669, at *3 (noting that a "long line of cases" in Minnesota have held that an insured can recover attorney fees when the insurer has a duty to pay defense costs). Thus, ASI can recover its attorney fees if it successfully defends this declaratory-judgment action. *See id.* at *4. The Court therefore denies St. Paul Fire's motion to strike ASI's claim for attorney fees.

## ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. St. Paul Fire's Motion for Summary Judgment and to Strike Certain Claims (Doc. No. [69]) is **GRANTED IN PART** and **DENIED IN PART**, as follows:

  a. St. Paul Fire's Motion for Summary Judgment regarding the warranty of express seaworthiness is **DENIED**;

  b. St. Paul Fire's Motion for Summary Judgment regarding collateral estoppel is **DENIED**;

  c. St. Paul Fire's Motion for Summary Judgment regarding ASI's negligence claim is **DENIED**;

  d. St. Paul Fire's Motion to Strike ASI's demand for a jury trial is **GRANTED**; and

  e. St. Paul Fire's Motion to Strike ASI's claim for attorney fees is **DENIED**.

2. ASI's Motion for Partial Summary Judgment (Doc. No. [84]) is **GRANTED**. The Court finds that the P&I Policy does not contain an expressed warranty of seaworthiness.

Dated: May 24, 2017          s/Donovan W. Frank
                    DONOVAN W. FRANK
                    United States District Judge